# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

v.

Case No. 5:23-cr-01389-MIS

KEVIN DWIGHT CLEMENTS and
KARYN L. ESTRADA,

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT

**THIS MATTER** is before the Court on Defendant Karyn L. Estrada's Motion to Dismiss Counts One and Two of the Indictment, filed November 17, 2023. ECF No. 55 ("Motion"). On November 24, 2023, co-Defendant Kevin Dwight Clements filed a Notice of Adopting Estrada's Motion. ECF No. 60. On December 15, 2023, the Government filed a Response to the Motion, ECF No. 65, to which neither Defendant replied. Upon review of the Parties' submissions, the record, and the relevant law, the Court **DENIES** the Motion.

    **I.**    **Background**

The following allegations are gleaned from the Affidavit submitted by FBI Special Agent Daniel Fondse in support of the Criminal Complaint filed April 6, 2023.[1] ECF No. 1.

In January 2020, law enforcement officers in Eddy County, New Mexico, received information that an eleven-year-old girl (hereafter, "Doe 1") disclosed to a family member that Defendant Kevin Dwight Clements ("Clements") had sexually assaulted her on multiple occasions.

---

[1] Estrada also used the allegations contained in Special Agent Fondse's Affidavit and assumed them to be true for purposes of framing her Motion to Dismiss. See ECF No. 55 ¶ 2. The Government's Response contains additional and/or more detailed allegations. See ECF No. 65 at 1-7. However, the Government has not cited the source of, or provided the Court with evidence supporting, these additional and/or more detailed allegations. Therefore, the Court will not rely on them in this Order.

ECF No. 1 ¶ 6. In late January 2020, Doe 1 submitted to two forensic interviews during which she described multiple instances of Clements raping her between November 2018 and May 2019. Id. ¶¶ 6-7. The assaults occurred at Clements's residence and workshop at the Ponderosa RV Park in Artesia, New Mexico, which Clements owned and operated. Id. ¶¶ 7, 9(b).

The first time Clements assaulted Doe 1 he shoved her into a bedroom, removed her clothes, and placed his finger in her vagina. Id. ¶ 8(a). He also hit Doe 1 in the body and face, causing bruising. Id. As Clements was assaulting Doe 1, he told her that he was going to kill her. Id.

The following weekend, Clements threw Doe 1 onto the floor of the same bedroom where the previous assault occurred. Id. ¶ 8(b). When Doe 1 resisted and told Clements to stop, Clements put duct tape over her mouth to stop her from screaming. Id. Clements then raped Doe 1, pausing to kick and hit her when she resisted. Id. Clements also displayed a small black gun in front of Doe 1's face and threatened to kill her. Id.

On another occasion, Clements used a rope to tie Doe 1's arms around her back and to tie her legs together. Id. ¶ 8(c). He then threw Doe 1 in the back seat of his car, facing the floor, and covered her with a blanket. Id. He told Doe 1 that if she got out of the car he would kill her. Id.

On a fourth occasion, Clements put Doe 1 in the trunk of his car and drove Doe 1 to a different building on his property in the middle of the Ponderosa RV Park that Clements used as a workshop. Id. ¶ 9(b). Once inside the building, Doe 1 was able to briefly escape. Id. She ran around the building and hid under some boards. Id. When Clements found her, he hit her with a board, leaving a bruise. Id. Clements took Doe 1 to the other side of the building and removed her clothes. Id. Clements then touched her vagina with his hands and later punched her in the stomach. Id.

In May 2019, Doe 1 told Clements that she was going to tell someone about the assaults. Id. ¶ 8(d). In response, Clements retrieved the small, black gun from under a pillow and told Doe 1 that he was going to pull the trigger, but he was interrupted by a doorbell. Id. Doe 1 ran away to a family member's house the following day. Id.

Doe 1 stated that each time she was raped, the next day she observed Clements give money to Defendant Karyn L. Estrada ("Estrada")—an adult who had care or custody of Doe 1 during certain time periods. Id. ¶ 9(a). Doe 1 further stated that she had screamed during the assaults, so it was likely that Estrada, who was present at the residence where the assaults occurred, knew that Clements was assaulting Doe 1. Id.

In or around January 2020, law enforcement interviewed Estrada regarding Doe 1's allegations against Clements. Id. ¶ 10. Estrada denied any knowledge of Clements assaulting Doe 1. Id. Estrada also stated that she did not think Clements was permitted to have a gun. Id. Estrada stated that she learned that Clements had a small, black gun that he kept under his pillow and carried on his person, but she did not know whether it was real. Id.

Law enforcement also interviewed an adult female (hereafter, "Doe 2") who described being raped by Clements. Id. ¶ 11. Doe 2 stated that Clements owned a small handgun and had threatened her with it. Id. Doe 2 had seen Clements fire the handgun. Id. Doe 2 described Clements as paranoid from illegal street drug use. Id. Doe 2 feared for her safety, so she turned in Clements's handgun to police in June 2020. Id. The handgun—a small, black Ruger LCP .380 caliber automatic pistol, with one round in the chamber and five rounds in the magazine—was later transferred to the FBI. Id.

In or around April 2020, law enforcement interviewed Clements regarding Doe 2's allegations. Id. ¶ 12. Clements denied possessing anything illegal in his house and stated that any

guns in his possession were not real.  Id.  Clements admitted that he is not allowed to have guns because he has a felony bank robbery conviction.[2]  Id.

In May 2020 and again in February 2023, law enforcement interviewed a witness who stated that during the relevant period, Clements drove a Dodge Stratus sedan.  Id. ¶ 13(b).  According to the New Mexico Department of Motor Vehicles, in 2020 Clements was the registered owner of a 2006 Dodge Stratus.  Id. ¶ 16.

In or around January 2023, Doe 1 participated in a third interview during which she revealed that on one occasion, Estrada watched Clements rape Doe 1.  Id. ¶ 14(a).  She further stated that during the abuse described in her previous interviews, Clements kept a gun under his pillow which caused Doe 1 to fear for her safety.  Id. ¶ 14(b).  Doe 1 again stated that Clements paid Estrada each time Clements assaulted Doe 1.  Id. ¶ 14(c).  Doe 1 described the payment as two-rolled up bundles of money.  Id.  Although Doe 1 did not know the exact amount, she said the bundle included $50 and $100 bills.  Id.  She also described overhearing Clements and Estrada arguing over the price; Clements started the negotiation at $100, and they eventually agreed on $500.  Id.

On April 6, 2023, the Government initiated this case by filing a Criminal Complaint against Defendants.  ECF No. 1.

On September 14, 2023, a Grand Jury sitting in the District of New Mexico returned an Indictment charging five crimes:

- Count 1 charges both Clements and Estrada with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1) and 2;

---

[2] Clements was arrested on June 22, 1999, for armed bank robbery, a felony offense.  ECF No. 1 ¶ 15.  He was subsequently convicted and sentenced to 100 months' incarceration, to be followed by five years' supervised release.  Id.

- Count 2 charges Estrada with benefitting from sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(2) and 2;

- Count 3 charges Clements with kidnapping in violation of 18 U.S.C. § 1201(a)(1);

- Count 4 charges Clements with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924; and

- Count 5 charges Clements with being an unlawful user of and addicted to a controlled substance in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924.

ECF No. 41.

On November 17, 2023, Estrada filed the instant Motion to Dismiss Counts One and Two of the Indictment "for lack of sufficient subject matter jurisdiction." ECF No. 55 at 1. On November 24, 2023, Clements filed a Notice that he was adopting Estrada's Motion. ECF No. 60. On December 15, 2023, the Government filed a Response. ECF No. 65.

Although Estrada frames her Motion as one to dismiss "for lack of sufficient subject matter jurisdiction[,]" ECF No. 55 at 1, for reasons explained in Section III, infra, the Court finds that she is actually moving to dismiss the Indictment for failure to state an offense.

## II. Legal Standard

In general, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "An indictment need only meet minimal constitutional standards, and [the Court] determine[s] the sufficiency of an indictment by practical rather than technical considerations." United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." Id.

5

Notwithstanding the "minimal constitutional standards" required to render an indictment sufficient, id., a defendant may file a pretrial motion alleging "a defect in the indictment . . . including: failure to state an offense[.]" Fed. R. Crim. P. 12(b)(3)(B)(v). Rule 12(b) "permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" United States v. Pope, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting United States v. Covington, 395 U.S. 57, 60 (1969)). "If contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." Id. However,

> courts may entertain even motions to dismiss that require resort to facts outside the indictment and bearing on the general issue in the "limited circumstances" where "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."[3]

Id. at 1260-61 (quoting United States v. Hall, 20 F.3d 1084, 1088 (10th Cir. 1994)) (emphasis in original); see also Todd, 446 F.3d at 1068.

### III. Discussion

Defendants argue that even if the allegations contained in Special Agent Fondse's Affidavit are true, they are insufficient to establish federal jurisdiction under 18 U.S.C. § 1591(a). ECF No. 55 ¶ 2. Defendants argue that the alleged sex trafficking occurred entirely intrastate; the only possible "facility" or "instrumentality" of interstate commerce involved in the alleged sex

---

[3] Here, Estrada's Motion assumes (without conceding) the veracity of the allegations contained in Special Agent Fondse's Affidavit, see ECF No. 55 ¶ 2; the Government does not object to the Court's consideration of those facts; and the Court can determine whether, as a matter of law, the Government is incapable of proving its case beyond a reasonable doubt.

trafficking was United States currency; and money, by itself, is not a facility of interstate commerce. Id. ¶¶ 7, 11-25.

As an initial matter, although Estrada frames her Motion as one to dismiss "for lack of sufficient subject matter jurisdiction[,]" ECF No. 55 at 1, the Court finds that she is actually moving to dismiss the Indictment for failure to state an offense.

Count 1 of the Indictment charges Estrada and Clements with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1) and 2,[4] while Count 2 charges Estrada alone with benefitting from the sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(2) and 2. ECF No. 41. The federal sex trafficking statute provides, in relevant part:

**(a)** Whoever knowingly—

    **(1)** <u>in or affecting interstate or foreign commerce</u>, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

    **(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a) (emphasis added). Thus, a nexus to interstate or foreign commerce is an element of the sex trafficking crimes with which Defendants are charged. See United States v. Evans, 473 F.3d 1176, 1180 n.2 (11th 2007) (referring to Section 1591(a)'s "in or affecting

---

[4] "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2.

7

interstate or foreign commerce" language as an "element" of the offense); United States v. Pennington, 78 F.4th 955, 969 (6th Cir. 2023) (same); United States v. Collier, 932 F.3d 1067, 1075 (8th Cir. 2019) (same); United States v. Sawyer, 733 F.3d 228, 230 (7th Cir. 2013) (same); United States v. Campbell, 111 F. Supp. 3d 340, 346 (W.D.N.Y. 2015) (same).

Asserting that the Indictment—or, in this case, the Affidavit supporting the case-initiating Criminal Complaint—fails to allege a sufficient nexus to interstate commerce is a challenge to the sufficiency of the Indictment, not a challenge to the Court's jurisdiction. See United States v. Sinks, 473 F.3d 1315, 1320 (10th Cir. 2007). In Sinks, Count One of the indictment charged the defendant with violating 18 U.S.C. § 842(h), which "forbids the possession of stolen explosives 'which are moving as, which are part of, which constitute, or which have been shipped or transported in, interstate or foreign commerce, either before or after such materials were stolen.'" Id. (quoting 18 U.S.C. § 842(h)). The defendant argued that "because the indictment did not charge, and the jury did not find, an interstate commerce element for Count One, his conviction must be set aside." Id. The Tenth Circuit found that the Government's failure to charge "an interstate commerce element" in the indictment was not a "jurisdictional error." Id. Instead, the question was whether Count One, "by failing to charge the interstate commerce element . . . , failed to charge an offense." Id.

Accordingly, the Court rejects Defendants' argument that the allegations supporting the Criminal Complaint and Indictment fail to establish federal jurisdiction. "As Judge Easterbrook aptly explained: 'Subject matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231[5] . . . . That's the beginning and the end of the 'jurisdictional' inquiry.'" United

---

5 "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231.

8

States v. Prentiss, 256 F.3d 971, 982 (10th Cir. 2001) (quoting Hugi v. United States, 164 F.3d 378, 380 (7th Cir. 1999)), abrogated on other grounds by Sinks, 473 F.3d 1315.  As such, the Court construes Defendants' argument as challenging whether Counts One and Two—or, more specifically, the allegations contained in Special Agent Fondse's Affidavit—fail to allege an offense.  Sink, 473 F.3d at 1320; see also United States v. Flores, No. CR 20-1725 KG, 2020 WL 6263004, at *2-3 (D.N.M. Oct. 23, 2020) (rejecting the defendant's argument that the court lacked jurisdiction because the indictment—which charged him with violating 18 U.S.C. § 922(g)(1)[6]—failed to allege or establish a nexus to interstate or foreign commerce, and instead reviewing the alleged omission for failure to state an offense).

Properly construed, Defendants argue that Counts One and Two fail to state an offense because the alleged sex trafficking occurred entirely intrastate;[7] the only possible "facility" or "instrumentality" of interstate commerce involved in the alleged sex trafficking was United States currency; and money, by itself, is not a facility of interstate commerce.  ECF No. 55 ¶¶ 7, 11-25.

The Government argues that its burden of proving a nexus to interstate commerce is minimal, id. at 12 (citing United States v. Corley, 679 F. App'x 1, 6 (2d Cir. 2017); United States v. Elias, 285 F.3d 183, 188 (2d Cir. 2002)), and "is met when a defendant's actions involve

---

[6] Section 922(g)(1) makes it unlawful for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).

[7] The instant Motion does not argue that the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1591(a), as applied to purely intrastate sex trafficking, is an unconstitutional exercise of Congress's Commerce Clause authority.  In fact, the Motion concedes that there is authority to the contrary, ECF No. 55 ¶ 9, specifies that Estrada is asserting an "as-applied" challenge to Section 1591(a), and "ask[s] to preserve for potential review, without further argument at this time, the issue that §1591, when targeting purely intrastate conduct, is unconstitutional[,]" id. ¶ 10 (emphasis added).  Therefore, the Court need not address whether the TVPA, as applied to purely intrastate sex trafficking, is unconstitutional.  However, it appears that the courts that have considered the issue unanimously hold the opposite.  See, e.g., Evans, 476 F.3d at 1179 (upholding constitutionality of Section 1591(a) because purely intrastate sex trafficking of minors is part of an economic class of activities that "ha[s] the capacity when considered in the aggregate . . . to frustrate Congress's broader regulation of interstate and foreign economic activity"); see also Walls, 784 F.3d at 546; Campbell, 111 F. Supp. 3d at 346.

materials or instrumentalities that are ordinarily considered commercial or flow through the stream of commerce[,]" id. (citing United States v. Koech, 992 F.3d 686, 691 (8th Cir. 2021)). It argues that "[n]umerous Circuit Courts have noted Congress's intention to ensure, through the TVPA [Trafficking Victims Protection Act], that a prosecution under Section 1591 only require[s] a de minimis effect on interstate commerce due to the substantial effect on interstate commerce of sex trafficking in the aggregate." Id. at 12-13 (citing United States v. Walls, 784 F.3d 543, 546 (9th Cir. 2015); United States v. Campbell, 770 F.3d 556, 574 (7th Cir. 2014); United States v. Phea, 755 F.3d 255, 266 (5th Cir. 2014)). The Government argues that "the use of the RV park, a vehicle, a gun, and cash that traveled in interstate commerce prior to the cash exchange, taken together, are sufficiently in or affecting interstate commerce, thereby satisfying the interstate commerce elements of 18 U.S.C. § 1591." ECF No. 65 at 10; see also id. at 13-17.

Although the Tenth Circuit has apparently not interpreted Section 1591(a)'s "in or affecting interstate or foreign commerce" language, it has interpreted the analogous jurisdictional element of the money laundering statute, 18 U.S.C. § 1956. See United States v. Grey, 56 F.3d 1219, 1225 (10th Cir. 1995). In Grey, the court explained:

> The government's burden of proving an effect on interstate commerce under the money laundering statute is not very high: Indeed, it is at the very lowest of thresholds. There is "substantial agreement that the 'in or affecting interstate commerce' requirement has been broadly read and that a 'minimal effect' on interstate commerce is sufficient to establish federal jurisdiction." United States v. Kelley, 929 F.2d 582, 586 (10th Cir. 1991). "Minimal" is defined as "of, being, or having the character of a minimum." "Minimum" means "the least quantity assignable, admissible, or possible in a given case." Webster's Third New International Dictionary, Unabridged (1968).

56 F.3d at 1225. In at least two cases, the Tenth Circuit has found that the "in or affecting interstate or foreign commerce" element of the child pornography statute, 18 U.S.C.§ 2251(a),[8] was satisfied where the only nexus to interstate commerce was that the camera used to take the photographs had traveled in interstate commerce. See United States v. Humphrey, 845 F.3d 1320, 1322 (10th Cir. 2017); United States v. Jeronimo-Bautista, 425 F.3d 1266, 1268, 1273 (10th Cir. 2005).

Based on this precedent, the Court finds that Defendants' conduct "affected commerce" for purposes of Section 1591(a). Specifically, Defendants are alleged to have used during the commission of their crimes at least two items that travelled in interstate commerce—a car and a gun.[9] Special Agent Fondse's Affidavit alleges that on at least one occasion, Clements put Doe 1 in the trunk of his car, drove her to a different building in the RV park, and sexually assaulted her. ECF No. 1 ¶ 9(b). During the relevant period, Clements drove a 2006 Dodge Stratus that was not manufactured in New Mexico. Id. ¶ 16 ("Dodge is a company headquartered in Michigan. I do not know of any motor vehicles manufactured in the state of New Mexico."); id. ¶ 17(b) (stating that Clements's Dodge Stratus "was not manufactured in New Mexico . . . .").

---

[8] "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed." 18 U.S.C. § 2251(a).

[9] Special Agent Fondse's Affidavit alleges that Clements, not Estrada, used a car and a gun during the crimes. However, the Indictment charges Estrada as both a principal under 18 U.S.C. § 1591(a) and as an aider or abettor under 18 U.S.C. § 2. See ECF No.41. "[A]n aider and abettor is responsible for the acts of the principal as a matter of law . . . ." United States v. Deiter, 890 F.3d 1203, 1215 (10th Cir. 2018) (quoting In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016)). Thus, Estrada is responsible for Clements's use of a car and a gun during the sex trafficking offenses.

Additionally, during at least one sexual assault on Doe 1, Clements used a Ruger .380 caliber handgun. Id. ¶ 8(b). Ruger has production facilities in Connecticut, New Hampshire, North Carolina, and Arizona, but does not have any production facilities in New Mexico. Id. ¶ 18. "Accordingly, Clements' firearm must have been shipped or transported in interstate or foreign commerce." Id. Under Humphrey and Jeronimo-Bautista, Defendants' use of the car and gun is sufficient to satisfy the "in or affecting interstate or foreign commerce" element of Section 1591(a). See Humphrey, 845 F.3d at 1322; Jeronimo-Bautista, 425 F.3d at 1268, 1273.

Therefore, the Court finds that Defendants' alleged conduct had a minimal effect on interstate commerce sufficient to satisfy 18 U.S.C. § 1591(a)'s jurisdictional element, and Defendants' Motion to Dismiss Counts One and Two of the Indictment must be denied.[10]

## IV. Conclusion

Accordingly, it is **HEREBY ORDERED** that Defendants' Motion to Dismiss Counts One and Two of the Indictment, ECF No. 55, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[10] The Court declines to address whether (1) the exchange of United States currency or (2) the use of an RV park are sufficient to satisfy Section 1591(a)'s interstate commerce element.