**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

v.                                                          No. 1:23-cr-01389-MIS

KEVIN CLEMENTS & KARYN ESTRADA,

      Defendants.

**ORDER DENYING DEFENDANTS' MOTIONS TO CONTINUE AND GRANTING IN PART DEFENDANTS' MOTION REQUESTING AMENDED SCHEDULING ORDER**

      This matter is before the Court on numerous Motions from Defendants Kevin Clements and Karyn Estrada: Defendants' Joint Motion to Continue Jury Trial Date and for Extension of Pretrial Litigation Deadlines, ECF No. 78 (supplemented shortly thereafter with a clarifying Motion, ECF No. 79, collectively "Continuance Motions"); and Defendants' Joint Motion Requesting Amended Scheduling Order, ECF No. 81 ("Scheduling Motion"). The Government did not respond to any of the instant Motions. The Court held a status conference on March 6, 2024, at which the Court heard oral argument on both Motions ("March 6 Hearing"). Upon due consideration of the parties' submissions, the record, and the relevant law, the Court will **DENY** Defendants' Continuance Motions, ECF Nos. 78, 79; and **GRANT IN PART** and **DENY IN PART** Defendants' Scheduling Motion, ECF No. 81.

## I.     BACKGROUND

      This case is currently scheduled for trial beginning on May 6, 2024. *See* ECF No. 52 at 2. In the Court's Scheduling Order, the Court established the following pretrial deadlines:

**December 4, 2023**: Completion of discovery by the government, including *Brady* material (except for the government's continuing duty to disclose);

**December 11, 2023**: Completion of reciprocal discovery by Defendant (except for Defendant's continuing duty to disclose);

**February 26, 2024**: Expert and opinion witness notices, reports, and filed list of opinions; Fed. R. Crim. P. 16 discovery motions; Fed. R. Crim. P. 7(f) motions;

**March 11, 2024**: Responses to Fed. R. Crim. P. 16 discovery motions and Fed. R. Crim. P. Rule 7(f) motions; *Daubert* and Fed. R. Evid. 702 motions; Fed. R. Crim. P. 12 pretrial motions; Motions in limine; 413/414 notices; and Notice of defenses pursuant to Fed. R. Crim. P. 12.1 through 12.3[.]

*See id*.

Counsel for Defendant Estrada contacted the Government via e-mail on November 8, 2023, requesting a reverse proffer. *See* Ex. 1 at 7.[1] That offer was declined by the Government. *See id*. Counsel for Defendants responded as follows: "So, you are saying that the Government has no physical evidence corroborating the allegations. Got it." *Id*. No medical records were disclosed to Defendants at that time.

On February 16, 2024, the Government received consent to obtain Doe's medical records. *See* ECF No. 81 at 2. The Government completed a report on those records on February 26, 2024. *See id*. On March 1, 2024, the Government provided counsel for Defendants with the cover sheet for a SANE ["Sexual Assault Nurse Examiner"] exam of the alleged victim, Jane Doe, conducted on September 6, 2022, following an incident unrelated to the allegations in this case. The contents of the exam itself were provided to Defendants on March 5, 2024.  Those records do not contain a medical exam of Doe's genitalia. Also on March 1, 2024, the Government turned over mental health records for Doe which they had obtained from various medical facilities.

Counsel for Defendants shortly thereafter filed numerous Motions, arguing in sum that (1) the Government's allegedly "late" disclosure of such records mandated that the trial be continued;

---

[1] At the March 6 Hearing, the Court admitted two files into evidence: a collection of e-mails between the parties, ("Exhibit 1"), and the September 6, 2022, SANE exam ("Exhibit 2").

(2) the Government's concurrent disclosure of reports containing new witnesses alongside those medical and mental health records mandated the same; and that (3) a new, amended Scheduling Order should be issued, allowing Defendants to notice various expert witnesses. *See* ECF Nos. 78, 81; *see also* ECF No. 79 (supplementing ECF No. 78).

Defendants challenge what they describe as "the Government's eleventh-hour disclosure of the fact that there is no physical evidence (via a SANE or medical exam) substantiating the serious allegations of sexual abuse sustained by the alleged victim in this case." ECF No. 79 at 1. Defendants have made no showing that any medical exam of Doe's genitalia ever occurred— indeed, all statements made at the March 6 Hearing indicate that Doe refused a physical exam of her genitalia at her September 2022 exam. Essentially, Defendants argue that the Government's March 1 disclosure regarding their *lack* of physical evidence (in the form of a nonexistent genital exam) now entitles Defendants to a continuance.

At the March 6 Hearing, Defendants also indicated that they now believe a SANE exam of the Doe's genital area may have in fact occurred either at the time of the incident alleged in this case, or at the September 2022 SANE exam. *See* Transcript of March 6 Hearing ("Transcript") at 52-55.

Defendants also argue that the details of the mental health records disclosed on March 1, 2024, entitle Defendants to the late introduction of an expert qualified to discuss the possibility that Doe fabricated her original statements (made in January 2020, *see* ECF No. 1 at 3) implicating Defendants in her sexual abuse. Those records highlight, in part, that years after her initial statements, Doe allegedly suffered from mental health issues, substance abuse issues, and other generalized markers of juvenile misbehavior (such as engaging in juvenile sexual activity). *See* Tr. at 44-47.

3

Defendants further argue that a continuance of this trial is justified on the grounds of Government's allegedly late disclosure of potential witness testimony—primarily from neighbors and relatives—in this case. *See* ECF No. 79 at 2. Counsel for Defendants have made no argument as to those witnesses' special availability to the Government and conceded at the March 6 Hearing that they had already been aware of some of the witnesses, such as Defendant Estrada's adult children, and had not made efforts to interview other relevant witnesses.

## II.     ANALYSIS

### A.  Defendants' Continuance Motions, ECF Nos. 78, 79

"[B]road discretion must be granted trial courts on matters of continuances . . . ." *See Morris v. Slappy*, 461 U.S. 1, 11 (1983). In analyzing requests for a continuance, trial judges must analyze several factors, to include:

> [1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that [defendant] might suffer as a result of the district court's denial of the continuance.

*See United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (citing *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987)).

Applying all four factors to the circumstances here, the Court finds that Defendants fail to satisfy the criteria necessary for this Court to grant a continuance.

### 1.  Defense counsel have not demonstrated the appropriate diligence necessary to justify a continuance

Counsel for Defendants have failed to demonstrate the level of diligence which would potentially justify a continuance.

4

First, counsel for the Defendants did not attempt to obtain the alleged victim's medical records at any point over the approximately eleven months since the Government's initiation of this case. At the March 6, 2024, hearing, defense counsel repeatedly presented a theory as to why their e-mail of November 8, 2023—in which counsel for Defendants requested a reverse proffer—should instead be understood as a request for the disclosure of *all available medical records*. But the Court cannot interpret that e-mail as such. What's more, at the time that e-mail was sent, the Government was not in possession of the medical records disclosed on March 1, 2024.

Further, at the March 6 Hearing, the Court confirmed that counsel for various Defendants have served as defense counsel in dozens of criminal cases in federal court. The Court thus finds Defendants' concurrent argument—that they relied on the Government in good faith to disclose all medical records—provides them with no recourse under the diligence analysis.

As to the witnesses who Defendants challenge as untimely revealed, those witnesses are primarily the adult children, relatives, and neighbors of one or both Defendants. The Court finds that there was a high probability that such witnesses would be called at trial, and notes that they were at all times equally available to counsel for Defendants. With regards to the adult children specifically, defense counsel also admitted at the March 6 Hearing that they had in fact spoken with those witnesses.

Given the above, the Court finds that Defendants fail to demonstrate the requisite diligence justifying a continuance. Indeed, the Court finds that any potential prejudice to Defendants in this case regarding the Government's March 1, 2024, disclosure arises primarily because of defense counsel's failure to (1) appropriately and timely request medical records or (2) timely interview equally available witnesses.

**2.  The grant of a continuance would not serve the purpose for which it is sought, given the lack of any medical records supporting Defendants' case**

As to the second factor, the Court does not find that the grant of a continuance here would satisfy the purpose of the expressed need for the continuance: namely, to pursue expert testimony regarding (1) the absence of a SANE exam; (2) the potential existence of a SANE exam beneficial to Defendants; or (3) the victim's credibility. Nor would a continuance impact Defendant's ability to speak with witnesses disclosed on March 1, 2024.

The Court is unconvinced by Defendant's argument that their March 1 confirmation of the Government's *lack* of physical evidence that the alleged victim was sexually abused (a fact known to defense counsel in November 2023, *see* Ex. 1) can justify the grant of a continuance in this matter—if anything, the confirmation of such facts helps, rather than hinders, Defendants' case.

As to Defendants' argument that a "helpful" SANE exam—as yet undisclosed—may have been conducted, and that a continuance is thereby justified, counsel for Defendants have made no showing that there are any such medical records. A continuance would mean nothing for Defendants' efforts to obtain records which simply do not exist. The Court also concurrently—*infra*—amends its scheduling order to allow Defendants to late-notice any experts who may, indeed, provide Defendants with such evidence, alleviating any alleged need for a continuance.

Further, the Court finds that the alleged victim's mental health issues, first reported in 2023 (some three years following her initial allegations against Defendants), do not support Defendants' argument that they should be entitled to the late introduction of an expert on the alleged victim's credibility. Defendants proposed theory of relevance here is highly attenuated,

and the Court finds no logical link between the alleged victim's later struggles and her credibility at the time she made her initial statements in this case more than three years prior.

Lastly, the Court also finds that the roughly two months between the Government's disclosure of additional witnesses on March 1, 2024, and the date currently set for criminal trial (May 6, 2024) provides Defendants with adequate time to conduct any necessary interviews.

**3.  The inconvenience resulting from any continuance would be substantial**

The Court finds that the continuation of this matter—given Defendants' failure to satisfy prongs one and two of the analysis and the Court's heavy criminal docket—creates a substantial inconvenience.

**4.  The need asserted for the continuance and the harm that Defendants might suffer as a result of the district court's denial of the continuance do not justify a continuance**

The Court does not find that any alleged harm that Defendants may suffer—which counsel for Defendants primarily refer to as unspecified violations of Defendants' Sixth Amendment rights, *see* ECF No. 78—is concrete enough to justify the grant of any continuance.

If the Government lacks a SANE exam corroborating their case, such fact only helps Defendants. If a SANE exam of Doe's genitals did occur and assists Defendants, they shall be permitted to late-notice any experts necessary to testify to as much. Defendants' proposed theory of relevance regarding expert testimony about the alleged victim's credibility in January 2020, based on mental health records created several years later, is unconvincing. And finally, as discussed, Defendants still have a considerable amount of time to contact any and all witnesses disclosed by the Government on March 1, 2024 (witnesses who have been available to them throughout the course of all proceedings thus far).

Given Defendants' failure to satisfy any of the four factors justifying a continuance of the trial date in this matter, Defendants' Continuance Motions, ECF Nos. 78 and 79, are **DENIED**.

**B.  Defendants' Scheduling Motion, ECF No. 81**

As to Defendants' Scheduling Motion, ECF No. 81, the Court hereby **GRANTS** Defendant's Motion **IN PART**, only insofar as Defendants' may submit expert notices to the Court of a testifying expert who will testify that (1) a SANE exam was indeed conducted on the alleged victim's genitalia; (2) no damage was recorded; and (3) a finding of no damage to Doe's genitalia years after the alleged abuse could support a theory that the abuse, as alleged in this case, never in fact occurred. Any such notice must be accompanied by an affidavit attesting to the contents of that expert's report.

For the reasons discussed in Section II.A, any requests to modify the Court's Scheduling Order for the purpose of untimely introducing experts on any other topics are **DENIED**.

**IT IS SO ORDERED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE