1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF NEW MEXICO

3
    UNITED STATES OF AMERICA,        )
4                                    )
                    Plaintiff,       )
5                                    )
                    vs.              )  NO: 23-CR-1389 MIS
6                                    )
    KARYN ESTRADA,                   )
7                                    )
                    Defendant.       )
8

9

10                      TRANSCRIPT OF PROCEEDINGS
                          SENTENCING HEARING
11            BEFORE THE HONORABLE MARGARET I. STRICKLAND
                     UNITED STATES DISTRICT JUDGE
12                   WEDNESDAY, JANUARY 15, 2025
                            10:36 A.M.
13            LAS CRUCES, DOÑA ANA COUNTY, NEW MEXICO

14

15

16

17

18

19

20        (Proceedings recorded by machine shorthand and
    transcript produced by Computer-Aided Transcription.)
21
    REPORTED BY:        VANESSA I. ALYCE CHAVEZ, CRR, RPR, NMCCR
22                      Federal Official Court Reporter
                        100 N. Church Street
23                      Las Cruces, NM  88001
                        Phone:  (575) 528-1430
24                      Email:  Vanessa_Alyce@nmd.uscourts.gov

25

```
1    Appearances of Counsel:

2

         FOR THE UNITED STATES:
3
                    UNITED STATES ATTORNEY'S OFFICE
4                   District of New Mexico
                    200 N. Church St.
5                   Las Cruces, NM  88001
                    BY:  SILVIA DELGADO, ESQ.
6                        MATILDA VILLALOBOS, ESQ.

7
         FOR THE DEFENDANT:
8

9                   FEDERAL PUBLIC DEFENDER'S OFFICE
                    506 S. Main St., Ste. 600
10                  Las Cruces, NM  88001
                    BY:  FRANCISCO VALCARCEL, ESQ.
11

12
     Also Present:  Juan Ramirez, Probation Officer
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (In Open Court at 10:36 A.M.)
 2              THE COURT:  The next case is United States of
 3   America versus Karyn Estrada.
 4              May I have entries of appearance, please?
 5              MS. DELGADO:  Silvia Delgado and Matilda
 6   Villalobos on behalf of the United States.
 7              MR. VALCARCEL:  Good morning, Your Honor.
 8   Francisco Valcarcel on behalf of Ms. Estrada.
 9              Your Honor, I anticipate we will have some
10   witnesses, family members perhaps.  Would the Court prefer
11   that I conduct proceedings from the podium with the client
12   or from counsel table?
13              THE COURT:  Whatever you want to do is fine with
14   me, Mr. Valcarcel.  What do you want to do?
15              MR. VALCARCEL:  I'll bring -- I have a lot of
16   stuff, but I'll bring it over to the podium.
17              THE COURT:  Whatever works for is you fine with
18   me.
19              MR. VALCARCEL:  Thank you, Judge.  Thank you,
20   Your Honor.
21              THE COURT:  All right.  I've reviewed the
22   Presentence Report, the defendant's objections to the
23   Presentence Report, the Government's response, and then
24   Probation's addendum.
25              Counsel, have you received a copy of these
```

1    documents and reviewed them with your client?

2              MR. VALCARCEL:  We have, Your Honor.  And I would

3    state that, after reviewing the addendum that takes into

4    account all the objections and the responses, we have

5    nothing further at this time.

6              I do need to make a record regarding the legal

7    objection that was forwarded and the defense's response to

8    the PSR.

9              THE COURT:  Okay.  So after reviewing the

10   addendum to the Presentence Report, is the only outstanding

11   objection or correction the enhancement for the restraint?

12             MR. VALCARCEL:  Yes, Your Honor, I believe

13   that's -- that might be rendered moot because of the case.

14   So that's the part I was going to make the record about.

15             THE COURT:  Okay.  I just wanted to make sure.

16   So there were a bunch of objections to the Presentence

17   Report -- excuse me.  There were a bunch of corrections to

18   the Presentence Report.  Are any of those outstanding at

19   this point?

20             MR. VALCARCEL:  No, Your Honor.

21             THE COURT:  Okay.

22             MR. VALCARCEL:  We're ready to proceed with the

23   addendum as is.

24             THE COURT:  Okay.  So then the only outstanding

25   objection or correction is the issue about the enhancement

1    for the restraint that we're going to address now?

2                MR. VALCARCEL:  Yes, Your Honor.

3                THE COURT:  All right.  Go ahead, Mr. Valcarcel,

4    on the objection.

5                MR. VALCARCEL:  Thank you.  It's no secret that

6    the defense believes that 30 years is too high a sentence

7    for Ms. Estrada.  In its efforts to try to mitigate her

8    punishment, we forwarded that objection, but the Court can

9    see that, in accordance with our obligations of candor to

10   the Court, we noted contrary case law.  So even though I

11   believe, as a defense lawyer, that the plain language of

12   3A1.3 would not seem applicable to Ms. Estrada's particular

13   circumstances because of the Tenth Circuit decision in *U.S.*

14   *v. Walker,* Your Honor -- and I can quickly summarize:  In

15   that case, the defendant's boyfriend was force-feeding a

16   child some pizza, causing the child to choke.  And there's

17   all these horrible allegations regarding child abuse.  When

18   the boyfriend was force-feeding the child some pizza, the

19   defendant, who was the child's mother, saw that and just

20   said she didn't want to deal with it and turned around and

21   went to her room.  So, in those circumstances, the Tenth

22   Circuit found that the physical restraint enhancement was

23   applicable.  Given that, Your Honor, at this time, I cannot

24   move forward on that objection, Your Honor --

25                THE COURT:  Okay.

UNITED STATES DISTRICT COURT
100 N. Church St., Las Cruces, NM  88001
(575) 528-1430

1          MR. VALCARCEL:  -- because I believe the case law

2    will not be in our favor.

3          THE COURT:  Okay.  So you're withdrawing the

4    objection regarding the restraint enhancement?

5          MR. VALCARCEL:  Yes, Your Honor, given the case

6    law.

7          THE COURT:  All right.  So that's withdrawn.

8          Any other objections or corrections that -- to

9    the Presentence Report, then?

10         MR. VALCARCEL:  No, Your Honor.  The remainder of

11   our presentation this morning would basically be a request

12   for mitigation --

13         THE COURT:  Okay.

14         MR. VALCARCEL:  -- or a downward variance in the

15   case.

16         THE COURT:  Then I'll hear from the parties.

17         First, from the Government?

18         MS. DELGADO:  Thank you, Your Honor.

19              (Discussion off the record.)

20         MS. DELGADO:  So, Your Honor, based on the

21   information -- first of all, Your Honor, let me address the

22   Victim Rights Act, okay?  We did advise the victim of all of

23   her rights under the Victim Rights Act.  She is present in

24   court today and would like to address the Court when the

25   Court is ready to speak to her.

1          However, based on the information outlined in the
2    PSR, sentencing memos, and the fact that the defendant
3    accepted responsibility and did plead guilty prior to trial,
4    the United States will be requesting a sentence at the low
5    end of the Guideline of 30 years of imprisonment and will
6    impose the special penalty assessment.
7          Since the Court has heard all the trial testimony
8    and reviewed all the relevant documents, exhibits, briefs
9    filed by counsel, we will be standing by our brief, but if
10    the Court has any additional questions, we are happy to
11    answer them.  And, as a reminder, the victim and her family
12    are present in the courtroom and are ready to speak when the
13    Court would like to hear from them.
14          THE COURT:  All right.  Whenever the Government
15    wants to present them is fine with me.
16          MS. DELGADO:  Your Honor, she's ready now.
17          THE COURT:  How do you want her to --
18          MS. DELGADO:  We had advised her she was going to
19    be at the podium.
20          THE COURT:  That's fine.
21          Mr. Valcarcel, why don't you guys sit down.
22          MR. VALCARCEL:  We'd be happy to, Judge.  Thank
23    you.
24          (Discussion off the record.)
25          THE COURT:  All right.  Come forward to the

1    podium here.  State your name and make your statement for

2    the court.

3              MS. MASCORRO:  Kamryn Mascorro.

4              THE COURT:  Go ahead.

5              MS. MASCORRO:  Mom, I always doubted myself after

6    everything happened.  I never knew how to handle myself

7    after everything happened.  I would get into my moods and

8    end up taking it out on the wrong people.  I'm already going

9    to be 17 and still don't know how to process what happened

10   or handle myself.  I'm still making bad decisions because I

11   always thought I wasn't good enough in life.  All I ever do

12   is think, like, "Why?"  I want to be the way I am, as if

13   none of this happened.  Just to be a mom, and all you ever

14   did was think about yourself and not your kids.

15             Now -- and, now, look at us:  We can't talk or

16   see each other anymore.  I have so much anger inside, I

17   don't even know what to do with it anymore.  You made me

18   feel like I was worth nothing.  The one time I needed you,

19   you kicked me to the curb like it -- like it didn't hurt.  I

20   wish it didn't end up like this, but it did.  There's not

21   one day that passes where you're not on my mind.  I'm always

22   thinking about you, just wondering if you're okay.  Your

23   baby still loves you so much, Mom.

24             That's all I have to say.

25             THE COURT:  All right.  Thank you for your

1    statement.  I'm sure you've been told this before, but

2    nothing that happened to you was your fault.  I mean, you

3    deserved a lot better than what you got.

4             It's up to me what to give your mom, the

5    defendant, in this case, but what's your request for

6    sentencing?

7             MS. MASCORRO:  I'm not too sure.

8             THE COURT:  That's okay.  All right.  You can

9    have a seat.

10            MS. MASCORRO:  Okay.  Thank you.

11            THE COURT:  Thank you for coming to court.

12            Anybody else from the Government?

13            MS. DELGADO:  No, Your Honor.

14            THE COURT:  All right.  Defense, you can come

15   back to the podium or you can remain -- whatever you want to

16   do, Mr. Valcarcel.

17            MR. VALCARCEL:  That's fine, Your Honor.  If I

18   can use the podium?

19            THE COURT:  Sure.

20            MR. VALCARCEL:  Thank you.

21            May I proceed, Your Honor?

22            THE COURT:  Of course.  Go ahead, Counsel.

23            MR. VALCARCEL:  May it please the Court.  Your

24   Honor, we have a series of horrible allegations that have

25   been proven beyond a reasonable doubt at trial.  And it's

1  enough to make even the most level-headed person's blood
2  start boiling a little bit.
3          I'm not going to mince words.  My client, Karyn
4  Estrada, was a horrible mother.  And, in a minute, I'll -- I
5  will enter into more detail as to why I'm using the past
6  tense.  But she was a horrible mother to Ashley.  I mean, we
7  have the reports; we have the history; the Court has gone
8  over voluminous filings and materials, so the Court is well
9  aware of what the history is.  She was also a horrible
10 mother to Adrianna.  Daniel is an interesting case.  I don't
11 know if he took after his father or just, you know, he's
12 taken to the wrong path.  I don't know how he's doing or
13 what his plans for the future are.  And all of this toxic
14 stew led up to what happened with Ms. Mascorro.
15         And, in Karyn Estrada, Kevin Clements found
16 fertile soil for satisfying his perversions.  It's
17 unfortunate for my client that she lacked the stamina and
18 the emotional, psychological resources to be able to not put
19 herself first; to be able to get rid of the drug addiction
20 and the addiction to opioids and alcohol.  And she just spun
21 out of control and this eventually led to basically her
22 prostituting her own daughter.  And, again, these are facts
23 which can -- people that don't have a certain temperance or
24 level-headedness would certainly crucify Ms. Estrada.  She
25 was a horrible mother, and there's no doubt about that.

1          Now, I'm using the past tense, Your Honor,

2     because all of this came to a head.  Being a crappy mom to

3     Ashley, Adrianna, Daniel, that's not a federal crime.  But

4     when she agreed to prostitute her daughter to Clements, that

5     certainly became a federal offense, and it was proven here

6     beyond a reasonable doubt.  All that being said, I think,

7     with the utmost respect to the Court, to the Government,

8     federal criminal courts are ill-suited to heal family

9     relations.  I don't know, I'm not a social worker, I'm not a

10    counselor, I'm not trained in that area, but at the end of

11    the day, Your Honor, I don't know if life will be better

12    with Ms. Estrada dying in prison.  And I'm not exaggerating

13    when I say "dying."  I think 30 years for a first felony

14    offender, even in a serious offense, is quite a long

15    sentence.  I know the Government provided a detailed

16    response as to the availability of medical treatment and

17    whatnot, but I don't think that gets to the crux of the

18    matter.

19          I would note that I have been informed that her

20    oldest daughter is trying to heal the relationship with

21    Ms. Estrada.  Because we're in a pending case, I told them

22    that we have to wait to see what happens.  Again, I don't

23    know if that willingness to ever retake or restart a

24    relationship is -- if Ms. Mascorro is willing to do that,

25    but, at the end of the day, Your Honor, I think 30 years is

1    too much.

2           I would note, for purposes of the record, that

3    the reasons we believe that sentence would be unreasonable

4    as to Ms. Estrada, taking into account the Guideline, which,

5    again, at the end of the day, is advisory, and the 3553(a)

6    factors, which, admittedly, cut both ways, Your Honor, she

7    accepted responsibility.  She entered a guilty plea.  The

8    charge did not carry a mandatory minimum.  The original

9    charge, which is sex trafficking with coercion -- sex

10   trafficking of a minor by coercion, carried a 15-year

11   minimum.  Eventually, we entered a plea that doesn't carry a

12   mandatory minimum, but now the Guidelines are recommending

13   twice that amount.  With all due respect, I've never been a

14   prosecutor, but I can only imagine, not only the chaos, the

15   complications, but the emotional turmoil, especially for the

16   victim, if we had gone to trial and Ms. Mascorro had to face

17   her mother in the midst of a criminal jury trial.  By

18   Ms. Estrada not going to trial and accepting responsibility

19   for subjecting her daughter to this horrible ordeal, the

20   Government did not have to do that.  The Government did not

21   have to deal with a situation that could have been

22   infinitely messy.  This is not to doubt the capabilities of

23   the prosecution team.  They're both very experienced

24   attorneys, but I could have seen that a long way coming,

25   Your Honor.

 1          It was -- I can understand that perhaps -- and,

 2    again, I'm not putting words in the Government's mouth --

 3    but thinking as a lawyer, the only training I have, I can

 4    understand perhaps why it would be frustrating for the

 5    Government, given that Ms. Estrada initially wanted to

 6    cooperate against Mr. Clements and testify at trial -- when

 7    we sat down, I think the meeting was -- was moving right

 8    along, but when -- as the prosecutor has to do, the

 9    prosecutor began to address Ms. Estrada's own conduct, she

10    froze up and, I think, at that point, cooperation was no

11    longer a viable option.  So I can perhaps understand the

12    frustration that the Government experienced.

13          This case has been a learning experience for me,

14    even though I've been practicing for 24 years.  But it was

15    hard for Ms. Estrada for all these -- all these miss --

16    failings, all this -- this reprehensible conduct as a parent

17    to hit her all at once.  And it's been hard work trying to

18    get her to this point.

19          I would note, Your Honor, that I know that she

20    has been a horrible mother.  She has been the victim of

21    trauma herself.  We are not trying to engage in a contest

22    here to see who has been the most traumatized.  At the end

23    of the day, if we're older, if we're adults, if we're

24    parents, it's upon us to fix our trauma.  Because unfixed

25    trauma, we end up spewing that on other people; people that

1    have no -- they should not be hurt.  They should not be

2    exposed to our unhealed trauma.  And, unfortunately,

3    Ms. Estrada never got the chance to fix that.  And the

4    filings we have, the social work history, the evaluation by

5    Dr. Barneclo, point to some of the reasons that that trauma

6    was not handled before it exploded into this horrible

7    situation, Your Honor.  I would simply note that -- I

8    believe it's on page 15 of the Government's response -- that

9    the Government outlined some of the behavior that victims of

10   sexual abuse have to battle, have to overcome, have to deal

11   with for the rest of their lives.  And a lot of that

12   Ms. Estrada has suffered as well.

13          And we see the results of that unhealed trauma.

14   You know, she didn't take ownership of her mothering.  She

15   didn't control her drug abuse.  She was putting herself

16   first.  She was going with the worst men out there, and she

17   was exposing her children to all kinds of harm.  But all

18   that's come to a head, Your Honor.  That's why I say that

19   she was a horrible mother.  She is willing to take ownership

20   of the fact that she failed her children miserably, but now

21   she is in a position where she is willing and able to -- and

22   I'm faithful that the BOP will have resources that can help

23   her, if the Court were to grant a more lenient sentence, as

24   we're requesting, so that, when she comes out, perhaps even

25   if it's for a brief minute, this family's toxic trauma can

1    be healed.

2            I know that it's frustrating.  I know page 16

3    says that, Well, she says she can handle on it her own, so

4    drug use is not an issue.  The problem with Ms. Estrada is

5    that she always tried to -- on the report, she always tried

6    to pretend she had it together, and then everybody else is

7    paying the consequences.  And that mask is off, Your Honor,

8    in front of the District of New Mexico -- I don't know if

9    there's anybody from the news -- and all of Artesia, as far

10   as I know, knows it.  The mask is off.  She has to take

11   ownership.  She cannot deflect anymore.

12           I know page 22 of the response paints a rather

13   pessimistic picture of her prospects for recovery.  I would

14   respectfully differ with that.  We have, appended to our

15   response to the PSR, Dr. Barneclo's evaluation.  He does

16   provide some science-based recommendations that can assure

17   that if Ms. Estrada were to see the light of day again, she

18   would be a law-abiding, healthy citizen that would not

19   engage in conduct harmful to the public or her family.  I

20   would also disagree that it's necessary -- and I'm

21   paraphrasing.  And, again, I apologize if my paraphrasing is

22   overbroad or incorrect -- but it's not necessary to send a

23   message by sentencing Ms. Estrada to 30 years.  I think we

24   are at a time, Your Honor, where even the most wealthy,

25   powerful music moguls, businessmen, they're undergoing

1   prosecution for all their sexual abuse.  This does not go

2   unpunished.  But a woman with a host of trauma, limited

3   economic means, from Artesia, New Mexico, we don't need to

4   send a message with her, Your Honor.  I think ten years is

5   more than enough.

6          I know that there are concerns as to what happens

7   moving forward.  The Court has tools that can assure that

8   not only deterrence and respect for the law is met, but that

9   we have a sentence sufficient but not greater than necessary

10  under the law.  There's always the possibility -- along with

11  the different therapeutic and vocational treatment that she

12  can receive, we also have the possibility of lifetime

13  supervised release, Your Honor.

14         Also, very importantly, for the record -- this is

15  something that I found out recently after looking at a legal

16  article -- the offense of conviction that Ms. Estrada has

17  disqualifies her from First Step Act earned-time credit.

18  So, again, no disrespect to anyone, but when the Government

19  asks for 30 years, with no earned time credits, that's a

20  capital sentence, Your Honor.  So, again -- and just for the

21  record, it would be all offenses from Chapter 77.  1591

22  falls under that.  I think the only exceptions are for 1593

23  and a couple of other statutes, but, based on my legal

24  research, she would be ineligible for earned-time credits.

25  So that only adds to the punishment.  And it still makes

1    ten years a very onerous sentence, Your Honor.

2                I would -- for illustration purposes, Your Honor,

3    let's take the *Walker* case, itself, which we alluded to

4    briefly.  We didn't go into the facts, but as I mentioned

5    earlier, this was a case that involved child abuse on the

6    Muskogee reservation.  And, in that case, both the mother of

7    the child that was abused and the boyfriend who conducted

8    some horrible physical abuse, feeding the child within an

9    inch of his life, they received favorable plea offers; both

10   were denied; they went to trial.  At the end of the case,

11   both of them were found guilty, and the Court varied upwards

12   substantially.  The Court in that case mentioned that it had

13   not run into a situation like that.  The Court agreed with

14   the Government's argument that they could have proceeded

15   under a more severe statute and that an upward variance

16   could ensure a sentence comparable to punishment under that

17   more severe statute that they chose not to prosecute or go

18   to trial on.  At the end of the day, the boyfriend got

19   300 months.  The mother got 120 months.

20                This case has some rather unique circumstances,

21   Your Honor, but I was recently, very recently, made aware of

22   a case, surprisingly prosecuted by the Department of Justice

23   out of West Virginia.  And I found this out, not through

24   Westlaw or Lexis, but through the *New York Times*.  And this

25   case involved a former police chief named Larry Clay.  Larry

1    Clay paid a woman $100 to have -- to sexually assault her
2    17-year-old daughter.  This was a sex trafficking of a minor
3    prosecution.  At the end of that prosecution, he was found
4    guilty.  He received 25 years, and the mother received
5    9 years.
6              I can instinctually understand why it hurts -- we
7    feel more anger, we're more concerned when a child's own
8    mother is the one who facilitates the horrible abuse that
9    was committed.  We all have parents, we all have families,
10   and it hurts.  When a stranger hurts us, it hurts, but it
11   doesn't hurt as much as when it's our own flesh and blood.
12   And that's what makes this case so difficult, Your Honor.
13   But, at the end of the day, if nothing else, Kamryn Mascorro
14   was spared the trauma of pointing out in front of 12
15   strangers, and whatever strangers are in the audience --
16   Kamryn was spared the trauma of having to point at her own
17   mother in front of those strangers and tell them, "That's
18   the woman who took some money to have me abused by Kevin
19   Clements."
20             So, unfortunately, AOR can only get us so far,
21   but, Your Honor, given the history and circumstances that
22   were presented, we respectfully submit that a sentence not
23   to exceed ten years is still a substantial punishment.  It
24   ensures deterrence.  What happened to the Estrada family,
25   what happened to Ashley, Adrianna -- Daniel, again, I can't

```
 1    speak for him -- what happened to Kamryn will never happen
 2    again.  Kamryn will be safe.  Ashley will heal.  Adrianna
 3    will, one day, forgive.  But I don't think that that
 4    wound -- those wounds, because they're collective wounds,
 5    it's collective trauma -- I don't think these wounds are
 6    going to heal when they find out their mother died in inside
 7    a federal prison.
 8              Thank you, Judge.
 9              THE COURT:  Thank you.
10              MS. DELGADO:  Your Honor, before we hear from any
11    witnesses, may we approach?
12              THE COURT:  Sure.
13                  (Bench conference.)
14              MS. DELGADO:  Thank you, Your Honor.  I
15    apologize.  I just wanted to address two issues:  Number 1
16    related to the debrief.  Yes, she did come and sit down, but
17    we do want to make it clear to the Court that she helped in
18    no way.  We completely prosecuted the case without her
19    assistance.
20              THE COURT:  I was here in trial.  But what
21    happened?  Like, why did you-all choose not to use her?
22              MS. VILLALOBOS:  Why did we do what, Your Honor?
23              THE COURT:  Why did you choose not to use her as
24    a witness in trial?
25              MS. VILLALOBOS:  She chose not to testify, Your
```

1    Honor.  She did not agree to testify.

2            THE COURT:  So she comes in and debriefs, you-all

3    start talking to her about what she did, and then she

4    refused to speak further?

5            MS. VILLALOBOS:  Correct.  She notified us she no

6    longer wished to participate in the prosecution.

7            THE COURT:  There, during the debrief?

8            MS. VILLALOBOS:  I think it was --

9            MR. VALCARCEL:  Your Honor, what happened was we

10   were going over the conduct of the codefendant, and she had

11   no problem.  But, obviously, the Government needs to address

12   what she did, and, at that point, she froze.  So I don't

13   think it was more of a, "Well, I'm going to" -- because we

14   spoke to her and we tried to salvage it, but it was -- I can

15   lead a horse to water, but I can't make them drink.

16           THE COURT:  You've done a very good job in this

17   case.  None of this is your fault.

18           MR. VALCARCEL:  Thank you.

19           THE COURT:  But -- so did you notify the

20   Government later on behalf of your client that she would not

21   be cooperating --

22           MR. VALCARCEL:  Yeah, because we had to dig

23   through the trauma and all that stuff.  Thank you.

24           THE COURT:  Anything else?

25           MS. DELGADO:  The second issue is:  We didn't

```
 1    know you were bringing witnesses; we didn't have notice of
 2    that.  We would like to know who is coming and what they're
 3    going to say, so we can at least prepare the victim --
 4                MR. VALCARCEL:  Oh, we don't have --
 5                MS. DELGADO:  -- for what she might hear.
 6                MR. VALCARCEL:  -- any witnesses.
 7                (Reporter interruption for clarification.)
 8                THE COURT:  Okay.  We've got to talk into the
 9    microphone --
10                MR. VALCARCEL:  Oh, sorry.
11                THE COURT:  -- because she can't hear.
12                MS. DELGADO:  Okay.  I thought you said people
13    were going to testify on her behalf.
14                MR. VALCARCEL:  No, no.  I'm sorry.  I had
15    mentioned that I anticipated, you know, on your end, but we
16    don't have anybody.
17                MS. DELGADO:  Oh, okay --
18                MR. VALCARCEL:  We don't --
19                MS. DELGADO:  -- we --
20                (Reporter attempted interruption for clarification.)
21                MS. VILLALOBOS:  Just very briefly:  On the
22    cooperation, we just wanted to note for the record --
23    Mr. Valcarcel mentioned our frustrations with that -- we
24    didn't take her refusing to cooperate -- that was not
25    anything, like, we were punishing her for in our sentence.
```

1    In our request for 30 years, we did not take into account

2    her refusal to cooperate in coming up with that sentence.

3            THE COURT:  I didn't think you did.  Okay.  All

4    right.

5            (Bench conference concluded.)

6            THE COURT:  All right.  Ms. Estrada, what would

7    you like to say before you're sentenced?

8            THE DEFENDANT:  Your Honor, I am very ashamed of

9    my horrible choices that have hurt my daughter and continue

10   to impact her.  I have regrets and remorse every day for the

11   physical and mental trauma my daughter, Kamryn, suffered

12   because of my selfish decisions.  I have found, not only

13   Kamryn, but also my daughters, Ashley and Adrianna, and my

14   son, Daniel, they have been hurt by this situation of my

15   addictions all their lives.  Now that I am sober and making

16   progress in getting help, I can see more clearly into the

17   pain I have caused them.  And if I could take this trauma

18   away from them -- most importantly from Kamryn -- I would in

19   a heartbeat.

20           After learning of the depths of the allegations

21   in the PSR, I am devastated to know that the codefendant

22   also used a firearm to threaten my daughter's life.

23   Admitting to myself and taking responsibility for what I

24   have done to my daughter has been the hardest thing I've

25   ever had to do.  Nothing compares to it.  Not losing our

1    Habitat for Humanity home and not losing my dog and best

2    friend Raider because of my incarceration.  It's so hard to

3    reconcile within myself what I have caused.  And it's a

4    costly regret that casts a shadow on my heart.  The guilt

5    and shame completely overwhelm me, yet mean absolutely

6    nothing when I consider the pain my daughter, Kamryn, feels.

7            However, where do I go from here?  Not for myself

8    but to somehow help her cope and to reach her to a feeling

9    of normalcy, if that is even possible.  I don't know if it

10    is, but that is my hope for her.  Since my incarceration,

11    I'm now receiving counseling and support for the first time.

12    It has made me realize many things.  My choices and

13    selfishness led to my addiction to alcohol, illegal drugs,

14    and to my prescribed pain medications, including opioids.

15    My addictions blinded me seeing or caring about the trauma I

16    was causing my children.  I am solely responsible for

17    failing as mother to all of my children, but especially to

18    Kamryn.  I can see now -- see that now and admit that.

19            I have started to reconcile with Ashley and

20    Daniel by apologizing for things I can remember and

21    believing them and hearing them out when they tell me about

22    ways I have hurt them that I don't ever remember because I

23    was too drunk or high.  It feels like the start of a long

24    healing process for them.  And, for me, I pray every day

25    that all three of my children will eventually offer me

1    forgiveness, especially Kamryn, even though I know that I

2    may not deserve that.  As for forgiving myself, I can only

3    pray that, one day, God will show me the way.

4            I just want to tell Kamryn that I know that

5    "sorry" is not enough and I -- you can't say "sorry" a

6    million or more times, but I'm so sorry for hurting you,

7    Kamryn.  And I'll be a more good mother to you.  And if I

8    could take it all back and do things over, I would.  And if

9    I've ever caused you any harm, just know that I love you and

10   I think about you every day and hope you're doing good in

11   school and with your family relationships.

12           THE COURT:  Ms. Estrada, why did you do this to

13   your daughter?

14           THE DEFENDANT:  I was highly under the influence

15   of drugs and alcohol and I wasn't in a clear state of mind.

16           THE COURT:  I mean, a lot of people use drugs and

17   alcohol, a lot of them are not in clear states of mind; they

18   do not let their own daughter be sexually abused by their

19   boyfriend.  What other explanation do you have?

20           THE DEFENDANT:  I was afraid of what he would do

21   if I didn't allow him to do that.

22           THE COURT:  Okay.  So why did you do it

23   repeatedly?  Why didn't you call the police and have him

24   arrested?

25           THE DEFENDANT:  I didn't think that the cops

1    would do anything, and I was afraid to get in trouble

2    myself.

3                THE COURT:  You didn't think the cops would do

4    anything about a man molesting a child?

5                THE DEFENDANT:  Like I said, I was under the

6    influence, heavily, of illegal drug use, ma'am.

7                THE COURT:  I mean, a mom's job is to protect her

8    children, not be their victimizer.  I'm just -- I don't

9    understand why a mother would do this to their child.

10   You've been in county for a while now.  What have you come

11   up with?

12               THE DEFENDANT:  I can repeat it over and over:

13   For my illegal drug use and being selfish and not caring

14   about my child.

15               THE COURT:  Why do you think you're that level of

16   selfish?

17               THE DEFENDANT:  I'm sorry?

18               THE COURT:  Why do you think you're so selfish?

19   I mean, a lot of us are selfish, but why do you think you're

20   so selfish as to sell your daughter to your boyfriend for

21   money and drugs?

22               THE DEFENDANT:  Unresolved trauma and not getting

23   the loving care that I -- that I never received also from my

24   own mom.

25               THE COURT:  I mean, you know, your attorney is

1    asking for a very low sentence.  The Government's asking for

2    30 years in prison, but the Guidelines are 30 years to life.

3    I'm concerned that you're a danger to children -- you're a

4    danger to your own children.  I'm concerned you're a danger

5    to other children as well.  Do you want to address that?

6            THE DEFENDANT:  I can guarantee that it would

7    never happen again.

8            THE COURT:  Why?

9            THE DEFENDANT:  Because I'm now sober and

10   receiving therapy for my mental health issues.

11           THE COURT:  I mean --

12           THE DEFENDANT:  And I've been sober even before

13   my incarceration and have remained sober during my

14   incarceration.

15           THE COURT:  Why didn't you get sober, when you

16   were sexually trafficking your daughter, so you could stop?

17   Why didn't you work on that?

18           THE DEFENDANT:  I didn't know how.

19           THE COURT:  I mean, did you ever try?  Did you go

20   to Alcoholics Anonymous, Narcotics Anonymous?

21           THE DEFENDANT:  I tried going to mental health

22   therapy.  And every time I would get a counselor, they would

23   move away.  And...

24           THE COURT:  Okay.

25           THE DEFENDANT:  ...I was on a long waiting list

1    to get into a therapist that specialized in PTSD.

2              THE COURT:  Did you try to do anything, like,

3    while you were on the waiting list, to stop, to stop using

4    drugs and alcohol, so you weren't abusing your young

5    daughter?

6              THE DEFENDANT:  When I started taking prescribed

7    opioids, that's when I stopped drinking alcohol.

8              THE COURT:  Okay.  Did you stop doing anything

9    else?

10             THE DEFENDANT:  No.

11             THE COURT:  Why?

12             THE DEFENDANT:  Because I was addicted.

13             THE COURT:  But why didn't you try to do things

14   to get un-addicted, or to at least stop using as much?

15             THE DEFENDANT:  Because I didn't have the

16   resources, ma'am.

17             THE COURT:  Uh-huh.

18             Mr. Valcarcel, did you want to say something?

19             MR. VALCARCEL:  Yes, Your Honor.

20             THE COURT:  Go ahead.

21             MR. VALCARCEL:  Your Honor, I do have -- one of

22   the challenges with Karyn has been that she -- it's really

23   difficult for her to express herself.  So we had the -- her

24   allocution, we worked together on it.  I know she was -- it

25   came out staccato because she was crying.  I've given a copy

1    to Ms. Delgado and Ms. Villalobos.  If we can --

2              THE COURT:  Sure.  Of course, hand that to

3    Ms. Chavez.

4              Did you want to refer me to a part of it or did

5    you just give me a copy of it?

6              MR. VALCARCEL:  Just so the Court has a copy of

7    it.

8                   (Discussion off the record.)

9              MR. VALCARCEL:  And, Your Honor, just to address

10   the Court's concern:  There was one occasion -- I believe we

11   mentioned it in the social work history -- where Clements

12   beat Ms. Estrada.  She called the police, but I believe, as

13   unfortunately happens on a lot of domestic violence cases,

14   she backed out from, you know, cooperating with that arrest.

15   But there was at least one call that was made as a result of

16   Clements' battery.

17             THE COURT:  That's when he beat her, not when he

18   beat her daughter, right?

19             MR. VALCARCEL:  That's when he beat her.  That's

20   a call --

21             THE COURT:  Yeah.

22             MR. VALCARCEL:  -- but the case did not go

23   anywhere.

24             THE COURT:  It didn't go anywhere because the

25   defendant backed out and won't testify against him?

1          MR. VALCARCEL:  It's what we see often with

2     these --

3          THE COURT:  Yeah, we do.

4          MR. VALCARCEL:  -- DV cases.

5          Your Honor, there's also an issue that we

6     mentioned, alluded to in the -- if not -- in Dr. Barneclo's

7     evaluation, which he does mention how she tends to

8     underreport or paint a rosier picture than what's really

9     going on.  I believe, when we look at her social work

10    history, we see why these trust issues came about.

11         THE COURT:  When she didn't like the way the

12    providers talked about the clients?

13         MR. VALCARCEL:  She worked at a place where --

14    and that kind of traumatized her, that she felt she couldn't

15    turn to anybody.  But then, you know, we have this person

16    that, then -- he shows her what she believes is love and --

17    you know, and then starts supplying her with drugs -- and

18    all of this ties into the testimony that was heard at trial

19    by the gentleman who was one of the nation's top experts on

20    grooming.  You know, obviously, the victim here is Kamryn,

21    but it is a fact that, to get to Kamryn, Clements had to

22    work on Ms. Estrada.  And just to note that, Your Honor.

23    Thank you.

24         THE COURT:  Yeah.  I mean, that's true.  A lot of

25    pedophiles do that.  They find women who are vulnerable to

1    allowing their children to be molested.  But, I mean, I've

2    done criminal defense for years.  I've been a judge for a

3    bit now.  This is the worst case of trafficking her own

4    child that I think I've ever seen.

5          You did it repeatedly.  You did it just -- you

6    did it for drugs and money, and you did it -- you gave her

7    to a person that you knew was violent.  I mean, it's violent

8    to attack and rape children, but he was violent beyond that.

9    He beat her.  He used weapons against this tiny, little

10    girl.  I just don't -- I mean, do you want to try again to

11    explain it to me?  I mean, I understand you were using drugs

12    and alcohol.  I understand that you have past trauma.  We

13    see that literally every single day, but we don't see things

14    like this every single day.  Why are you like this, that you

15    could do this to your own child?

16          (Discussion off the record.)

17          THE COURT:  Do you want me to ask you again?

18          MR. VALCARCEL:  She just told me she doesn't know

19    what to say, Your Honor.

20          THE COURT:  Okay.  Do you understand the

21    question, Ms. Estrada?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  But you don't know what to say to it?

24          THE DEFENDANT:  I've already said what I can say.

25    I don't know what else to say.

1          THE COURT:  Okay.  I'm going to sentence you to

2    life in prison.

3          The Court accepts the plea agreement in this

4    case.  The Court adopts the Presentence Report's factual

5    findings and has considered the Sentencing Guideline

6    applications and the 3553(a) factors.

7          The Offense Level is 42.  Criminal History is I,

8    Guideline range is 360 to life.

9          The Court notes the defendant provided the

10   services of Jane Doe, her then ten-year-old daughter, to

11   codefendant Clements, who physically and sexually abused Doe

12   on several occasions over approximately six months.  Doe was

13   in the care, custody, and supervisory control of Estrada,

14   who was aware that Clements was sexually abusing Doe by

15   force, which included him digitally penetrating her vagina,

16   penetrating her vagina with his penis, and other aggravated

17   sexual abuse.

18         While sexually abusing Doe, Clements threatened

19   to kill her, put a knife to her stomach, and pointed a gun

20   at her.  Clements restrained Doe by holding her hands down

21   as he assaulted her, dragging her from one room to another;

22   threatening to kill her to prevent her from fleeing.  Doe

23   sustained serious bodily injury while being punched and

24   struck by Clements, which appears to have been severe enough

25   that it resulted in Doe losing consciousness on several

1    occasions.  Doe was forced to accompany Clements to

2    different locations within his home where she was sexually

3    assaulted and forced to accompany him to a different

4    building in the RV park property, during which Doe was put

5    into a duffle bag and placed into the trunk of a vehicle.

6          As to the Information, the defendant is committed

7    to the custody of the Bureau of Prisons for life.  I'll make

8    a recommendation for the 500-hours program and the sex

9    offender treatment program.

10          Well, do you want that, Mr. Valcarcel?

11          MR. VALCARCEL:  Yes, Your Honor.

12          THE COURT:  Okay.

13          MR. VALCARCEL:  I would -- if the Court does not

14    want to downward vary, would the Court consider 30 years in

15    lieu of life?

16          THE COURT:  I did consider it.  I mean, I

17    considered the Sentencing Guidelines, so I considered the

18    Guideline.

19          The defendant is -- well, it's a life sentence.

20    If somehow there were to be supervised release, she's placed

21    on supervised release for ten years.  She must comply with

22    the mandatory and standard conditions of supervision,

23    including the standard sex offender conditions adopted by

24    the District of New Mexico in 2018.

25          The defendant should not communicate or otherwise

1    interact with the codefendant or coconspirator in this case.

2          The defendant -- the Court will -- let's see.

3    Oh, the mandatory Victim Restitution Act applies in this

4    case.  It's ordered the defendant make restitution to L.M.

5    in the amount of $2,170; A.M. in the amount of $439.96; and

6    Presbyterian Health in the amount of $1,304.03.  It's due

7    immediately.  She's jointly and severally held liable with

8    her codefendant, Mr. Clements.  To the extent the defendant

9    is unable to pay that immediately, the Court imposes a

10   backup schedule of payments of $300 per month or 15 percent

11   of her monthly gross income, whichever is greater, until

12   restitution is paid in full.  It will be submitted to the

13   Clerk of the Court at the federal court in Albuquerque.  I'm

14   using a pseudonym to protect the victim's privacy in this

15   case.

16         Based on a lack of resources, I won't impose a

17   fine.  I've considered a fine and find the total combined

18   sanction is sufficiently punitive.

19         The defendant will pay a special assessment of

20   $100.  That's due immediately.

21         Defendant is subject to the Justice for Victims

22   of Trafficking Act, but the Court finds the defendant is

23   indigent and will not be required to pay the assessment.

24         The defendant will not transfer, sell, give away,

25   or otherwise convey any asset with a fair market value in

1    excess of $500 without the approval of Probation until all

2    financial obligations imposed by this Court have been

3    satisfied.

4          Defendant will notify the Financial Litigation

5    Program of the United States Attorney's Office of any

6    interest in property obtained directly or indirectly,

7    including any interest obtained in any other name or entity,

8    including a trust, partnership, corporation, after the

9    execution of this agreement until the final restitution is

10   paid in full.  And the defendant will notify the Financial

11   Litigation Program of the United States Attorney's Office

12   before the defendant transfers any interest in property

13   owned directly or indirectly by the defendant, including any

14   interest held or owned under any name or entity, including

15   trusts, partnerships, and/or corporations.

16         The Court finds, pursuant to the plea agreement,

17   the defendant's waived her right to appeal the final

18   sentence imposed by the Court.

19         Anything else from the Government?

20         MS. DELGADO:  Your Honor, just relating to the

21   restitution, I know we discussed in our briefing we'd like

22   to have a hearing on it with Mr. Clements.  We will file a

23   briefing on it.

24         THE COURT:  You want to have a hearing on it in

25   this case?

1          MS. DELGADO:  Yes, Your Honor.

2          THE COURT:  Okay.  I mean, I just ordered it.  Do

3    you want something different than that?

4          MS. DELGADO:  Yes, Your Honor.  We're going to

5    request additional funds based on the reports we received

6    from our expert.

7          THE COURT:  Oh, okay.  I thought the script was

8    complete on that.

9          Mr. Valcarcel, what's your position on having a

10   hearing on that?

11         MR. VALCARCEL:  I have no objection to the amount

12   that was outlined in the addendum.  I will -- if I can

13   reserve on that --

14         THE COURT:  Sure.

15         MR. VALCARCEL:  -- until I see what the

16   Government wants to get from Ms. Estrada, Your Honor.

17         My only remaining issue, Your Honor:  We're

18   asking the Court to consider including a J&C recommendation

19   for Bryan, Texas, the women's facility.

20         THE COURT:  I'll make a recommendation for that

21   facility.

22         MR. VALCARCEL:  I realize that she -- we entered

23   into a plea bargain with a waiver of appeal; nonetheless, I

24   have to see what happens.  Just for purposes of the record,

25   I cannot realistically say that the Court didn't explain the

1      sentence sufficiently.  We respectfully differ with the

2      Court's assessment and the sentence that was imposed.  We

3      believe it is in violation of 18 U.S.C. § 3553(a).  And

4      that's just for purposes of the record.

5              THE COURT:  No, that's fine.  I'll go over the

6      3553(a) factors.

7              I've considered the 3553(a) factors to impose a

8      sentence that's sufficient but not greater than necessary to

9      comply with the purposes set forth in sentencing.

10             First, I'm considering all the arguments from the

11     Government, including that they're asking for a 30-year

12     sentence.

13             I'm considering all arguments from defense

14     counsel, which was laid out in defense counsel's filing, but

15     including the evaluation, including Ms. Estrada's lack of

16     really significant criminal history before this crime, and

17     considering Ms. Estrada's acceptance of responsibility.  I'm

18     considering Ms. Estrada's expressed remorse as to what she's

19     done, including Ms. Estrada's -- the trauma to which she was

20     subjected by numerous people in her life, and all other

21     arguments by defense counsel and Ms. Estrada herself.

22             The Court's considering the nature and

23     circumstances of the offense and the history and

24     characteristics of the defendant.  I mean, the nature and

25     circumstances of the offense are extremely serious.

1   Ms. Estrada sold her very young daughter to her drug dealer

2   boyfriend, or her boyfriend who also used a lot of drugs

3   along with her, for money on multiple occasions.  She knew

4   that her boyfriend was dangerous because -- well, because he

5   wanted to buy a child to rape and because she, herself, had

6   witnessed her boyfriend be violent towards her.  She called

7   the police one time based on her boyfriend's violence.  She

8   didn't follow through and have him put in custody, and she

9   didn't call the police when her daughter was being abused by

10  him, but she knew that he was dangerous.  And so the nature

11  and circumstances of this case are extremely serious.

12          The Court's considering the history and

13  characteristics of the defendant, including everything laid

14  out by defense counsel and the Presentence Report that

15  speaks in her favor, but also based on some history and

16  characteristics that don't -- that are not favorable for

17  Ms. Estrada.  She does have some criminal history before she

18  committed this crime and, admittedly, has been -- I think

19  the term was a "horrible" mother to her children.  So I'm

20  considering, I guess, the negative and sometimes positive

21  history and characteristics of the defendant.

22          I'm considering the need for the sentence imposed

23  to reflect the seriousness of the offense -- it's -- again,

24  this offense is very serious -- promote respect for the law

25  and provide just punishment for the offense.  I find a

1    high-end sentence -- well, a life sentence is needed to meet

2    those goals in sentencing.

3        I'm considering the need to afford adequate

4    deterrence to criminal conduct.  The defendant's explanation

5    for her criminal conduct and explanation to the Court's

6    concern that she needs to be deterred from is just that she

7    used drugs and alcohol and had some other underlying mental

8    health issues.  That is something that the Court has seen in

9    her practice and has seen, as a judge, many times.  That

10   does not really explain this criminal behavior adequately,

11   so I'm concerned that the defendant will continue to be a

12   danger to children.  I'm also considering deterrence to the

13   public or anybody else who might consider selling their

14   child for money.

15       I'm -- oh, I'm considering to protect the public

16   from further crimes of the defendant, which I just reviewed.

17       I'm considering the need to provide the defendant

18   with educational and vocational training, medical care and

19   correctional treatment in the most effective manner, which I

20   find to be in the Bureau of Prisons.  I made a

21   recommendation for two different programs in the Bureau of

22   Prisons.

23       I'm considering the kinds of sentences available

24   and the defendant's request for a ten-year sentence.  I'm

25   considering the sentencing range.  I'm giving a Guideline

1    range sentence.  I'm considering all United States Guideline

2    policy.

3        I'm considering the need to avoid unwarranted

4    sentencing disparities among defendants with similar records

5    who have been found guilty of similar conduct.  Defense

6    counsel did discuss other cases where defendants received

7    lower sentences than what Ms. Estrada is receiving today.  I

8    don't find those defendants have similar records or to have

9    been found of similar conduct because the conduct in this

10   case is egregious.  But if there is some sentencing

11   disparity among defendants with similar records who have

12   been found guilty of similar conduct, I find it's warranted

13   in this case by the defendant's -- by the age at which she

14   sold her daughter to her boyfriend, her knowing her

15   boyfriend was extremely violent, and the length time she

16   allowed her daughter to be sexually used for money.

17       I'm considering the need to provide restitution

18   to the victim in this case.  I've ordered restitution, and

19   it looks like we'll either have a hearing on more

20   restitution or there'll be some kind of stipulation by the

21   parties.

22       Mr. Valcarcel, does the defendant have an

23   objection to the adequacy of the explanation for that

24   sentencing?

25       MR. VALCARCEL:  I'd be hard-pressed to say that

1    it hasn't been sufficiently explained.  At the end of day,

2    all I'm asking is for leniency, but the Court has made its

3    decision, Your Honor.  We disagree with it, and I have to

4    move on.

5              THE COURT:  I understand, Mr. Valcarcel.  You did

6    a really good job under a very difficult case.  I appreciate

7    all the work --

8              MR. VALCARCEL:  Thank you, Your Honor.

9              THE COURT:  -- that you have done.

10              Anything else from the Government?

11             MS. DELGADO:  Your Honor, just to be clear, since

12    Mr. Valcarcel stated that, we understand defense objects to

13    the length of the sentence imposed, but we want to ensure

14    that the defendant, nor Counsel, has any objections to the

15    procedural history or posturing that the Court has conducted

16    this far.

17             THE COURT:  Mr. Valcarcel?

18             MR. VALCARCEL:  No, Your Honor, procedurally,

19    I -- and, again, I -- there's some conversations I need to

20    have.  If I didn't voice a procedural objection, I believe

21    there's none.  Substantively, I think it's patently obvious,

22    but aside from that, Your Honor, that's all I have to say.

23    Thank you.

24             THE COURT:  All right.  Thank you.

25             MR. VALCARCEL:  Your Honor, with that, may I be

1    excused?

2              COURT CLERK:  Yeah -- hold on one second.  I'm

3    sorry.

4                    (Discussion off the record.)

5              THE COURT:  We need a motion and order to dismiss

6    Counts 1 and 2 of the Indictment.

7              MS. DELGADO:  The Government will do that.

8              THE COURT:  All right.  Thank you both.

9              (The proceedings concluded at 11:27 A.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      UNITED STATES OF AMERICA

2                      DISTRICT OF NEW MEXICO

3

4               CERTIFICATE OF OFFICIAL REPORTER

5        I, Vanessa I. Alyce Chavez, CRR, RPR, NMCCR, and

6    Federal Official Court Reporter in and for the United States

7    District Court for the District of New Mexico, do hereby

8    certify that pursuant to Section 753, Title 28, United

9    States Code, that I did report in stenographic shorthand to

10   the best of my skill and ability the foregoing pages 1-41 of

11   the proceedings set forth herein, that the foregoing is a

12   true and correct transcript of the stenographically recorded

13   proceedings held in the above-entitled matter and that the

14   transcript page format is in conformance with the

15   regulations of the Judicial Conference of the United States.

16

17   Dated this 7th day of February 2025.

18

19   S/Electronically Filed
     Vanessa I. Alyce Chavez, CRR, RPR, NMCCR
20   Federal Official Court Reporter
     100 N. Church Street
21   Las Cruces, NM 88001
     Phone: (575) 528-1430
22   Email:  Vanessa_Alyce@nmd.uscourts.gov

23

24

25